## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| MARIA GUILLEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-2179-JAR |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM AND ORDER

This matter is before the Court for review of the final decision of Defendant

Commissioner of Social Security denying Plaintiff Maria Guillen's application for disability

benefits under Title II of the Social Security Act,[1] and supplemental security benefits under Title

XVI of the Social Security Act.[2] Plaintiff seeks review of Defendant's decision that Plaintiff was

not disabled prior to June 12, 2009.

**I.      Procedural Background**

Plaintiff protectively filed her application for disability benefits on November 10, 2004,

alleging a May 9, 2002 onset date of disability.  Plaintiff's claim was denied initially and on

reconsideration.  Following a hearing, Administrative Law Judge ("ALJ") George M. Bock

issued a decision on April 22, 2008, denying Plaintiff benefits.[3]  The Appeals Council denied

Plaintiff's request for review and Plaintiff filed an action in federal court ("Guillen I"), alleging

---

[1]42 U.S.C. §§ 401–434.

[2]42 U.S.C. §§ 1381-1383f.

[3]Doc. 4–2 at 33–40, R. 15–22.

the Commissioner erred as a matter of law in denying Plaintiff her disability benefits and further alleging that there was not substantial evidence to support the decision to deny her claim. The Court in Guillen I remanded for further proceedings.[4]  Following a supplemental hearing, ALJ Bock issued his second decision on August 9, 2010, finding Plaintiff disabled as of June 12, 2009, but not before.[5]

Plaintiff filed a second action in federal court ("Guillen II"), alleging the Commissioner erred as a matter of law in denying her benefits prior to June 12, 2009.  On January 30, 2012, the Court issued an order reversing and remanding the case for further proceedings.[6]  Following another supplemental hearing, ALJ Guy E. Taylor issued a decision on December 18, 2012, upholding the prior decision finding Plaintiff disabled as of June 12, 2009, but not prior.[7]  The decision of the ALJ became the final decision of the Commissioner after remand on February 16, 2013.  Plaintiff timely filed this action requesting that the Commissioner's decision be reversed as to the finding that she was not disabled prior to June 12, 2009, and that she be found disabled as of May 9, 2002.  In the alternative, Plaintiff requests that her case be remanded for a new hearing.

## II.    ALJ Findings[8]

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date—May 9, 2002.  At step two, the ALJ found Plaintiff to have "severe"

---

[4]Doc. 4–4 at 64, R. 379; *Guillen v. Astrue*, Case No. 08-2590-CM (D. Kan. Jan. 29, 2010) (adopting Report and Recommendation in *Guillen v. Astrue*, Case No. 08-2590-CM-GBC (D. Kan. Jan. 14, 2010)).

[5]Doc. 4–4 at 49–59, R. 364–374.

[6]Doc. 4–6 at 53, R. 698; *Guillen v. Astrue*, Case No. 10-2657-SAC, 2012 WL 262572 (D. Kan. Jan. 30, 2012).

[7]*Id*. at 38–51, R. 683–96.

[8]*Id*. at 40–51, R. 685–96.

impairments of diabetes mellitus type II, generalized arthralgias of an unknown etiology, situational depression and occasional cephalgia.  The ALJ proceeded to step three and concluded that Plaintiff did not have an impairment or combination of impairments that meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ then established Plaintiff's residual functional capacity ("RFC") to be for light work as defined in 20 CFR 404.1567(b) and 416.967(b), except for being limited to sitting and standing/walking six hours total in an eight hour workday.  The ALJ found that she is limited to simple unskilled work with a specific vocational preparation ("SVP") of two or less secondary to a limited ability to understand English and a loss of concentration, persistence or pace due to situational depression.  At step four, the ALJ concluded that Plaintiff had been unable to perform any past relevant work since May 9, 2002.  The ALJ proceeded to step five.

The ALJ found that prior to the established disability onset date, Plaintiff was either a younger individual age 18-49 or an individual closely approaching advanced age.  On June 12, 2009, Plaintiff's age category changed to an individual of advanced age.  Plaintiff has a marginal education and is only partially able to communicate in English.  Transferability of job skills is not an issue because Plaintiff's past relevant work is unskilled.  The ALJ found that prior to June 12, 2009, the date Plaintiff's age category changed, considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed.  Beginning on June 12, 2009, considering her age, education, work experience, and RFC, there are no jobs that exist in significant numbers in the national economy that she could perform.  The ALJ found that Plaintiff was not disabled prior to June 12, 2009, but became disabled on that date.

### III.  Standard of Review

The Court reviews the Commissioner's decision to determine whether it is "free from legal error and supported by substantial evidence."[9]  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[10]  It requires "more than a scintilla, but less than a preponderance."[11]  Whether the Commissioner's decision is supported by substantial evidence is based on the record taken as a whole.[12]  Evidence is not substantial if it is "overwhelmed by other evidence in the record or constitutes mere conclusion."[13]  To determine if the decision is supported by substantial evidence, the Court will not reweigh the evidence or retry the case, but will meticulously examine the record as a whole, including anything that may undercut or detract from the Commissioner's findings.[14]

Plaintiff must demonstrate the error in the ALJ's rationale or finding; the mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination.  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."[15]

---

[9] *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir.2009); *see* 42 U.S.C. §§ 405(g) and 1383(c)(3).

[10] *Wall*, 561 F.3d at 1052; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir.2007).

[11] *Wall*, 561 F.3d at 1052; *Lax*, 489 F.3d at 1084.

[12] *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir.1994).

[13] *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir.2005).

[14] *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir.2007).

[15] *Lax,* 489 F.3d at 1084 (citations, quotations, and bracket omitted); *see also Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966) (same).

## IV.    Legal Standards and Analysis

Plaintiff bears the burden of proving disability under the Social Security Act.[16]  Plaintiff is under a disability only if she can establish that she has a physical or mental impairment which prevents her from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least twelve months.[17]  Claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education and work experience, engage in other substantial gainful work existing in the national economy.[18]

The Commissioner uses a five-step sequential process to evaluate disability.[19]  In the first three steps, the Commissioner determines (1) whether claimant has engaged in substantial gainful activity since the alleged onset, (2) whether she has severe impairment(s) and (3) whether the severity of any impairment meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).[20]  If claimant satisfies steps one, two and three, she will automatically be found disabled; if claimant satisfies steps one and two but not three, she must satisfy step four.

At step four, the ALJ must make specific findings of fact at three phases: (1) claimant's RFC, (2) the physical and mental demands of prior jobs or occupations and (3) claimant's ability

---

[16]*Wall*, 561 F.3d at 1062.

[17]*Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir.1993) (citing 42 U.S.C. § 423(d)); *see also Knipe v. Heckler*, 755 F.2d 141, 145 (10th Cir.1985) (quoting 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A)).

[18]42 U.S.C. § 1382c(a)(3)(B).

[19]20 C.F.R. § 416.920; *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir.2010) (citing *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir.1988)).

[20]20 C.F.R. § 416.920; *Williams*, 844 F.2d at 750–51.

to return to her past occupation given her RFC.[21]  If claimant satisfies step four, the burden shifts

to the Commissioner to establish that claimant is capable of performing work in the national

economy.[22]

Plaintiff argues that the ALJ failed to find Plaintiff capable of performing substantial

gainful work on a full-time basis, failed to properly address Plaintiff's RFC, and erred in relying

upon the testimony of the Vocational Expert ("VE").

**V.     Discussion**

**A.     The ALJ's finding that Plaintiff is capable of performing substantial gainful
work on a full-time basis**

Plaintiff argues that the ALJ found that Plaintiff was limited to sitting, standing/walking

six hours total in an eight hour workday, and the VE testified that such an individual would not

be able to perform the jobs identified, nor could they perform any work in the national economy.

However, the ALJ found Plaintiff could sit for up to six hours in an eight-hour workday

and stand/walk for up to six hours in an eight-hour day, rather than finding that Plaintiff's

*combined* ability to sit, stand and walk was limited to six hours.  As evidenced by the ALJ's

hypothetical question to the VE, the ALJ found that Plaintiff could "stand and walk six hours in

eight, sit six hours in eight."  In response to the hypothetical question the VE testified that

Plaintiff could perform jobs such as photocopy machine operator, a folding machine operator,

and a fitting room attendant.  The ALJ determined that Plaintiff could perform other work as a

photocopy machine operator, a folding machine operator, and a fitting room attendant.

Plaintiff's argument is without merit.

---

[21]*Wilson*, 602 F.3d at 1139; *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir.1996); *Henrie v. U.S. Dep't of HHS*, 13 F.3d 359, 361 (10th Cir. 1993).

[22]*Jensen v. Barnhart*, 436 F.3d 1163, 1168 (10th Cir.2005).

**B.     The ALJ's assessment of Plaintiff's RFC**

The ALJ determined that Plaintiff had four severe impairments: diabetes mellitus type II, generalized arthralgias of an unknown etiology, situational depression and occasional cephalgia. As for her RFC, Plaintiff retained the ability to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), except for being limited to sitting and standing/walking six hours total in an eight hour workday.  She was further limited to simple unskilled work with an SVP of two or less secondary to a limited ability to understand English and a loss of concentration, persistence or pace due to situational depression.

**1.  Medically determinable impairments**

Plaintiff argues that the ALJ failed to consider medically determinable impairments in assessing RFC.  Plaintiff argues that although the ALJ mentioned Plaintiff's diagnosis of lupus, and found it was not a medically determinable impairment, he did not discuss her later diagnosis of scleroderma and the specific findings supporting that diagnosis.  Nor is there mention of Plaintiff's diabetic neuropathy, osteoarthritis with joint pain, bilateral carpal tunnel syndrom, or cognitive problems with memory loss, or whether Plaintiff's alleged symptoms and limitations could be caused by those conditions.

Plaintiff argues that the Court in Guillen I found that the ALJ erred in failing to find her carpal tunnel was a medically determinable impairment, and that the ALJ in the instant case has made the same mistake.  However, the Court in Guillen I noted that in that case the ALJ found that Plaintiff's hand problems were *not* medically determinable on the record, without discussing any of the evidence cited by the parties or mentioning whether the hand problems included

carpal tunnel.[23]  Because the Court could not reweigh the evidence to determine whether or not carpal tunnel was a medically determinable impairment, the Court remanded the case.  However in the instant case, the ALJ did not make a specific finding that Plaintiff's hand problems were not medically determinable.  The ALJ found that only Plaintiff's post-traumatic stress disorder and lupus were not medically determinable impairments.

The Court in Guillen I noted that the regulations require the ALJ to consider all of Plaintiff's medically determinable impairments, but absent evidence that the ALJ did not consider all of the medically determinable impairments, the Court will take the ALJ at his word when he specifically states that his RFC was based upon "careful consideration of the entire record."[24]  There is no evidence suggesting that the ALJ in this case failed to consider all of the impairments, including Plaintiff's hand problems, in assessing Plaintiff's RFC.  The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms."[25]

In Guillen II the Court noted that the ALJ failed to mention if other impairments, including diabetic neuropathy, migraine headaches, osteoarthritis with joint pain, cataracts, bilateral carpal tunnel syndrome, or autoimmune disorder were severe impairments.[26]  The Court noted that the burden of proof was on Plaintiff at step two to make a "de minimis" showing: "She need only be able to show at this level that the impairment would have more than a

---

[23]Doc. 4–4 at 74–76, R. 389–91.

[24]*Id.* at 74, R. 389.

[25]Doc. 4–6 at 49, R. 694.

[26]*Id.* at 71, R. 716.

minimal effect on his or her ability to do basic work activities."[27]   The Court found that "Plaintiff

has failed to point to any medical evidence which states or indicates that these impairments

would have more than a minimal effect on plaintiff's ability to perform basic work activities,"

and she failed to meet her burden of proof on this issue.[28]   The Court went on to state that even if

Plaintiff had met her burden of proof, it would not be reversible error if the ALJ failed to list all

the severe impairments at step two, because once the ALJ has found at least one severe

impairment, failure to designate others as "severe" at step two does not constitute reversible

error because the ALJ, in determining RFC, must consider the effects of all of the claimant's

medically determinable impairments—severe and not severe.[29]

### 2.  Medical opinions

Plaintiff argues that the ALJ erred in giving Dr. Finks' opinion little weight due to the

length of the treatment relationship.  Plaintiff acknowledges that Dr. Finks' opinion was given

little weight, in that "it was inconsistent with the objective signs and findings and diagnostic

tests previously cited (SSR 96-2p)."  However, she takes issue with the ALJ's statement that the

"opinion indicates claimant was not under his care until October 6, 2009, which is after her fifty-

fifth birthday."[30]  Plaintiff notes that the opinion is signed by Eileen Amari-Vaught, a nurse

practitioner, and co-signed by Jonathan Finks, M.D., her collaborating physician, and argues that

"[t]here is no indication when Dr. Finks may have started treating plaintiff and, furthermore, the

letter states plaintiff had been a patient at the facility since January 1, 2003 . . . It is likely both

---

[27]*Id.* (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1997)).

[28]*Id.* at 72, R. 717.

[29]*Id.* at 73, R. 718.

[30]*Id.* at 49, R. 694.

nurse Vaught and Dr. Finks were aware of plaintiff's medical history prior to October 6, 2009."[31] However, Plaintiff has pointed to no evidence suggesting that she was seen by Dr. Finks prior to the date set forth in the letter or evidence that he was in fact aware of her medical history prior to that date.  The ALJ did not err in giving little weight to this opinion.

The ALJ found that Dr. Schwartz's opinion was entitled to "some, but not controlling weight," stating that:

> The April 30, 2005 consultative examination of Michael Schwartz, Ph.D., noted claimant may have some memory problems and may have difficulty remembering work locations and procedures and understanding and following simple directions at that time. Although claimant was mildly depressed he did not believe her emotional functioning would interfere with her being able to work if she could do so physically.
>
> The undersigned gives some, but not controlling, weight to this opinion because it is not supported by the clinical sign [sic] and findings and diagnostic tests previously cited (SSR 96–2p). Further, this opinion is inconsistent with claimant's description of her activities of daily living and Dr. Schwartz's own statement that claimant's emotional functioning would not interfere with being able to work, if she could do so physically, and had a GAF of 60.[32]

Plaintiff argues that the ALJ's analysis of Dr. Schwartz's opinion repeats the same errors pointed out by the Courts in Guillen I and Guillen II.  The Court in Guillen I noted that the Court did not read Dr. Schwartz's opinion to imply that Plaintiff's difficulties remembering work location and procedures and understanding and following simple directions are subsumed within the rubric "emotional functioning," such that they "would not interfere with her ability to work if she could do so physically."[33]  Rather, it was only her major depression that Dr. Schwartz was

---

[31]Doc. 7 at 51–52.

[32]Doc. 4–6 at 48, R. 693.

[33]Doc. 4–4 at 83–84, R. 398–99.

referring to as affecting her emotional functioning without interfering with her ability to work.

However, the ALJ did not lump the Plaintiff's difficulties remembering work procedures and understanding and following simple directions within "emotional functioning." Rather, the ALJ found that this part of Dr. Schwartz's opinion was not supported by the clinical signs and findings in the medical record and was inconsistent with the finding regarding emotional functioning not interfering with her ability to work. The ALJ noted that Dr. Schwartz "noted it was difficult to assess [Plaintiff's] cognitive functioning because of the language barrier and agitation."[34] The ALJ also found that this opinion was inconsistent with claimant's description of her activities of daily living, and with Dr. Schwartz's own statements that her emotional functioning would not interfere with being able to work, if she could do so physically, and that she had a GAF of 60.[35]

Plaintiff also argues that the ALJ failed to provide authority—factual, legal or medical—for the conclusory finding that Dr. Schwartz's opinion is not supported by a GAF (Global Assessment of Functioning) score of 60 for Plaintiff. Plaintiff argues that the Courts in both Guillen I and Guillen II noted that a GAF score of 60 is consistent with moderate difficulty with occupational functioning. However, in Guillen I the Court noted that the ALJ failed to accept or reject Dr. Schwartz's suggested limitations, but rather ignored them.[36] In Guillen II the Court found that the ALJ erred in using Plaintiff's care of her grandchildren to discount her claims and the report of Dr. Schwartz. The Court has found that in this case the ALJ did properly weigh the opinion of Dr. Schwartz and did not rely on Plaintiff's care of her

---

[34]Doc. 4–6 at 45, R. 690; *see* Doc. 4–3 at 49, R. 205.

[35]*Id*. at 48, R. 693.

[36]Doc. 4–4 at 83, R. 398.

grandchildren to discount his report.[37]

Plaintiff also argues that the ALJ's statement that the opinion is given "some, but not controlling weight" and its rationale that the opinion "is not supported by the clinical sign [sic] and findings and diagnostic tests previously cited (SSR 96–2p)" are too vague and meaningless because the ALJ's decision does not identify what part of the opinion was adopted and what part was rejected, nor does it identify what signs, findings and diagnostic tests he is referring to. Likewise, she argues that the ALJ's statement that Dr. Schwartz's opinion is "inconsistent with claimant's description of her activities of daily living," again does not identify the specific activities he found to be inconsistent. Plaintiff argues that the ALJ repeats the statement that Plaintiff reported to Dr. Schwartz she likes to take care of her grandchildren, when she in fact stated she was upset she could not do what she used to do including cooking and taking care of her grandchildren.

Although the ALJ does misstate Plaintiff's report to Dr. Schwartz regarding taking care of her grandchildren in his discussion regarding whether or not the severity of Plaintiff's impairments meets or equals the severity of any impairment in the Listing in step three of his sequential process, the ALJ relied on other daily activities in assessing Plaintiff's RFC. In assessing Plaintiff's RFC, the ALJ noted with respect to Plaintiff watching her grandchildren, that: she indicated she cared for her grandchildren at her February 25, 2004 physical

---

[37]*See Harper v. Colvin*, 528 F. App'x 887, 891–92 (10th Cir. 2013) (ALJ's failure to include psychiatrist's GAF assessment was not reversible error where ALJ considered the psychiatrist's treatment, the report did not contain any evidence of a specific limiting effect of claimant's depression, and substantial evidence still supported the ALJ's findings.); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating RFC, it is not essential to the RFC's accuracy."); *Lopez v. Barnhart*, 78 F. App'x 675, 678 (10th Cir. 2003) (GAF score of 40 may indicate problems that do not necessarily relate to the ability to hold a job, thus standing alone, GAF score does not evidence an impairment seriously interfering with claimant's ability to work.); *Seymour v. Apfel*, 131 F.3d 152 (Table), 1997 WL 755386, *2 (10th Cir. 1997) (rejecting claimant's argument that ALJ erred by failing to consider GAF rating, noting that none of the therapists who rated claimant's GAF indicated that she could not work or that her problems interfered with her ability to keep a job.)

examination; she reported she watched six grandchildren in her home at her March 24, 2004 examination; and she reported she was no longer taking care of her grandchildren due to pain at the August 22, 2006 physical examination.[38]  The ALJ did not mention Plaintiff's statement to Dr. Schwartz in his RFC assessment.

In assessing Plaintiff's RFC, the ALJ noted the following activities of daily living:

> [I]n an April 18, 2005 Function Report –Adult–Third Party the claimant's daughter stated claimant lives in a house with her husband, watches television, cooks three times a week, cleans house, does the laundry, rides in cars, shops and has no problems taking care of her personal needs other than brushing her hair.  She indicated claimant handles money, pays bills, visits with others (Ex. 5E/1-6).  In a December 6, 2008 Function Report–Adult–Third Party the claimant's daughter stated claimant lives in a house with her husband, tries to take care of her husband, watches television, cooks three times a week, cleans house a little, does the laundry, rides in cars, shops by telephone and has no problems getting along with others (Ex. 17E/1-6).[39]

At the hearing, the ALJ questioned Plaintiff about a form from August 2008 that indicated that at that times she could make beds, cook, dust, sweep, drive, shop for groceries, and things of that sort.  When asked if she recalled being able to do that at that time, she responded "I wasn't able to do it, but I did it because I didn't want to stop and sit down and think because I was feeling really, really bad, so I just did it but I wasn't feeling well."[40]  The ALJ, in asking Plaintiff if she could handle money, noted that the August 2008 report indicated that she did shop for groceries then, and Plaintiff replied "Yes, I did."[41]

The ALJ gave Dr. Miles' opinion "some but not controlling weight" because it was "not

---

[38]*Id*. at 44–45, R. 689–90.

[39]*Id*. at 47, R. 692.

[40]Doc. 4–8 at 34–35, R. 992–93.

[41]*Id*. at 35, R. 993.

supported by the clinical signs and findings and diagnostic tests previously cited (SSR 96–2p)." The ALJ noted that this opinion was based upon a single evaluation of Plaintiff and Dr. Miles did not have the opportunity to review any medical evidence submitted after 2008.  Furthermore, the ALJ noted that Dr. Miles also stated that Plaintiff should be able to obtain and maintain employment even with her current mental condition.[42]

The Court finds that the ALJ properly weighed the medical opinions and properly resolved evidentiary conflicts.  The Court cannot reweigh the evidence.[43]

### 3. Credibility

Plaintiff claims that the ALJ did not properly evaluate her subjective complaints and wrongly determined that she was not credible.  Plaintiff argues that it was error for the ALJ to dismiss or ignore substantial evidence of Plaintiff's disabling pain and, in particular, her limited ability to use her hands without pain attributable either to carpal tunnel syndrome, osteoarthritis or to an autoimmune disorder, any one of which could reasonably have produced Plaintiff's symptoms.

The ALJ's credibility analysis was woven into his RFC determination.  The ALJ must determine residual functional capacity based upon all the relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own description of her limitations.  As part of the RFC finding, the ALJ must consider the credibility of Plaintiff's subjective complaints.  "Credibility determinations are peculiarly the province of the finder of fact" and will stand when supported by substantial evidence.[44] Therefore, courts usually defer to

---

[42]Doc. 4–6 at 48–49, R. 693–94.

[43]*Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[44]*Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010).

the ALJ on matters involving witness credibility.[45]

The Tenth Circuit has explained the analysis for considering subjective testimony regarding symptoms:

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability. Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain. This court has stated: The framework for the proper analysis of Claimant's evidence of pain is set out in *Luna v. Bowen*, 834 F.2d 161 (10th Cir.1987). We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.[46]

In this case, the ALJ stated that he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," referencing a number of sections of the Social Security Act and its regulations.[47]  The ALJ expressly discussed the requirements of SSR 96-7p,[48] that the Commissioner perform a two step evaluation, first determining whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's symptoms; and then, taking into the consideration the entire case

---

[45]*Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir.1994); *see Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir.1990) (courts generally treat as binding ALJ credibility determinations).

[46]*Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993) (dealing specifically with pain) (further citations and quotation omitted).

[47]Doc. 4–6 at 6, R. 688 (citing 20 C.F.R. §§ 404.1529, 416.929, 404.1527 and 416.927; SSR 96-4p; SSR 96-7p, SSR 96-2p; SSR 96-6p and SSR 06-3p).

[48]SSR 96-7P, 1996 WL 374186 (July 2, 1996).

record, evaluating the intensity, persistence, and functionally limiting effects of the symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities.[49]  The ALJ further acknowledged the requirement that whenever the claimant's claimed symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the statements, based on consideration of the entire case record.[50]

The ALJ found that "[a]fter considering the evidence of record," Plaintiff's "medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."[51]

The ALJ set forth multiple reasons for finding Plaintiff's allegations not credible.  The ALJ found that Plaintiff's complaints of symptoms and work-related limitations were uncorroborated in the objective medical evidence.  The ALJ found that although Plaintiff complained of arthralgias, the medical evidence of record indicates she had minimal findings in the physical exams of record.  The April 24, 2004 physical noted Plaintiff reported the tingling in her hands and feet had resolved and her vision was good.  Dr. Fortune's January 4, 2005 consultative examination found that Plaintiff's range of motion of the elbows and wrists were normal, finger dexterity was normal and upper extremity muscle strength was normal.  An October 3, 2006 physical noted Plaintiff's musculoskeletal pain and headaches were well controlled.[52]

---

[49]*Id.*; *Jones v. Astrue,* 500 F. Supp. 2d 1277, 1288–89 (D. Kan. 2007).

[50]*See Jones*, 500 F. Supp. 2d at 1288–89; SSR 96-7p.

[51]Doc. 4–6 at 49, R. 694.

[52]*Id.* at 44–46, R. 689–91 (citing Exs. 2F, 3F, 10F, 12F, and 15F).

The ALJ also found that Plaintiff exaggerated her subjective complaints.  The ALJ noted that Dr. Fortune found at the January 4, 2005 consultative examination that:

> claimant's general behavior was abnormal in that she seemed to have a great deal of embellishment of her symptoms.  Her range of motion improved as she put on her shoes and moved about the room.  She had ill defined and inconsistent reduced sensation in the left foot, no peripheral edema and no documented neuropathy.  Her gait was guarded in the examining room but normal in the hallway.  Range or motion of the elbows and wrists were normal, finger dexterity was normal and upper extremity strength was normal.  Claimant gave poor effort during testing of the upper and lower extremities.[53]

In addition, the ALJ found that Plaintiff was not always compliant with her diabetes and depression medications.  Plaintiff argues that the ALJ noted that Plaintiff was non-compliant with her medications at times but did not consider the mandate of SSR 96–7p, per the Court's order in Guillen II, and assess whether there was a valid explanation for Plaintiff's inability to seek or pursue regular medical treatment.  Plaintiff alleges that the ALJ failed to consider Plaintiff's reduced financial circumstances and lack of health insurance as a factor in her inability to obtain consistent and appropriate medical care.

In Guillen II, the Court held that upon remand, "the ALJ should consider [P]laintiff's testimony that she cannot afford food needed for a diabetic diet because she and her husband's income totals $797, she has no health insurance, and had applied for medical assistance, but was still waiting to see if she can qualify."[54]  The Court stated that the ALJ should consider the mandate of SSR 96–7p, which states:

> On the other hand, the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level

---

[53]*Id*. at 44–45, R. 689–90 (citing Ex. 3F).

[54]*Id*. at 75–76, R. 720–21.

of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure.  However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.  The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner.  The explanations provided by the individual may provide insight into the credibility.[55]

At the hearing, Plaintiff's counsel asked Plaintiff if, at times when her doctors told her that she needed certain medications, or that she needed to see other doctors, she was able to afford to do that.  She replied that she "was sent to a clinic where [she] could get the medicine," but although she was referred to see a rheumatologist, she "didn't have money and [she] wasn't able to go see him until [she] got the Medicaid."[56]

The ALJ questioned Plaintiff at the hearing as to whether her medication controlled her diabetes.  Plaintiff responded that it does help her, but because of the foods that she eats, she cannot control it.[57]  She acknowledged that she has been advised to go on a diet because of the diabetes, and stated that she tries to make an effort to follow a diet.[58]  Plaintiff testified that she stopped taking medication for swelling when she was told she had lupus and that there was no medication for that condition.  The ALJ then confirmed that she subsequently learned that she

---

[55]SSR 96–7p, 1996 WL 374186, at *7 (July 2, 1996).

[56]Doc. 4–8 at 37, R. 995.

[57]Doc. 4–8 at 24, R. 982.

[58]*Id.*

did not have lupus.[59]

The ALJ questioned Plaintiff about why she stopped seeing the people at Silver City Health Clinic and she responded that it was "[b]ecause I didn't have Medicaid and I didn't have money to pay, so they couldn't see me anymore."  Plaintiff then testified that she has not gone back to see them after she acquired Medicaid.[60]

The ALJ also noted that while Plaintiff alleged that her medications caused drowsiness and dizziness, her treatment records lacked documentation of any debilitating side effects to medication.  Although the Plaintiff alleged adverse side effect in an undated Disability Report, in a June 29, 2005 Disability Report, undated Disability Reports and a September 28, 2009 list of Current Medications, she did not indicate any adverse side effects.[61]

In *Flannagan v. Colvin*,[62] the Court addressed the claimant's argument that the ALJ's failure to apply the *Frey* test was a controlling factor to find the credibility determination erroneous and require remand.  The court in *Frey* stated a test which should be applied when the claimant has refused to follow or failed to undertake treatment recommended by her physician.[63] The Court in *Flannagan* found that although the ALJ erred in relying on the claimant's refusal or failure to undertake recommended treatment without applying the *Frey* test, the plaintiff failed "to recognize that the ALJ based his credibility determination on other factors also, and that a

---

[59]*Id.* at 33, R. 991.

[60]Doc. 4–8 at 29–30, R. 987–88.

[61]Doc. 4–6 at 47, R. 692 (citing Exs. 1E, 7E, 8E, 11E, and 12E).

[62]Case No. 12-4050-JWL, 2013 WL 5499807, *10 (D. Kan. Oct. 3, 2013).

[63]*Id.* at *9 (citing *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987)) ("In reviewing the impact of a claimant's failure to undertake treatment, . . . [the court] consider[s] four elements: (1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse.").

credibility determination requires consideration of all of the relevant factors in combination."[64] The Court found that, even when excluding that factor from consideration, the "substantial record evidence (especially when considering the ALJ's reliance on several incidents in which it was reported that Plaintiff exaggerates her symptoms) supports the ALJ's determination that Plaintiff's allegations are not credible."[65]

Likewise, in determining Plaintiff's credibility in this case, the ALJ found, in addition to Plaintiff's refusal to follow recommended treatment, that Plaintiff's complaints of symptoms and work-related limitations were uncorroborated in the objective medical evidence, that Plaintiff exaggerated her subjective complaints, and that Plaintiff's activities of daily living, as stated above, are not compatible with an individual that suffers from debilitating symptoms.[66]  The ALJ's credibility determination is supported by substantial evidence in the record, and because "[c]redibility determinations are peculiarly the province of the finder of fact," such determinations should not be upset when supported by substantial evidence.[67]

### C.      The ALJ's reliance on the VE's testimony

Based upon the testimony of the VE, the ALJ found Plaintiff unable to return to her past relevant work, but capable of performing a significant number of light jobs in the national economy.  The ALJ asked the VE to assume a hypothetical individual:

> between the ages of 48 and 55 with a third grade education . . .
> only a limited ability to read, write, and speak English.
> Additionally they would be able to lift and carry up to 20 pounds
> occasionally, 10 pounds frequently, stand and walk six hours in

---

[64]*Id.* at *10.

[65]*Id.*

[66]Doc. 4–6 at 47, R. 692.

[67]*Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (citation omitted).

> eight, sit six hours in eight, have an unlimited ability to push and
> pull with their extremities; however, as a result of their limited
> ability to read, write, and speak English, and as a result of a loss of
> concentration, persistence, and pace as a result of situational
> depression, they would need to be limited to simple unskilled work
> of SVP 2 or less.[68]

The VE testified that given those limitations, there are jobs in the national economy that such a person could do, including photocopy machine operator, folding machine operator, and fitting room attendant.[69]

Plaintiff argues that the hypothetical RFC presented to the VE did not include all of Plaintiff's limitations with respect to her difficulty remembering work locations and procedures, her difficulty understanding and following simple directions and the likelihood she would miss work two days per month, nor did it include any limitation regarding Plaintiff's difficulty using her hands, her depressive disorder and moderate inability to concentrate.  Plaintiff argues that the ALJ did not account for all of Plaintiff's impairments and limitations in that he failed to evaluate all the evidence and wrongly determined Plaintiff was not credible.  However, the Court has already addressed the weight the ALJ gave to the medical opinions relied on in Plaintiff's argument, as well as the ALJ's determination of Plaintiff's credibility.

Plaintiff argues that although the ALJ mentioned Plaintiff's "loss of concentration, persistence, and pace as a result of situational depression," he did not describe the loss as moderate or allow the VE to consider how that condition might affect the performance of certain jobs.  Plaintiff cites *Wiederholt v. Barnhart*,[70] as support for finding that the hypothetical

---

[68]Doc. 4–8 at 42, R. 1000.

[69]*Id*. at 42–43, R. 1000–01.

[70]No. 03-3251, 2005 WL 290082 (10th Cir. Feb. 8, 2005).

presented to the VE was flawed.

The hypothetical used by the ALJ in this case is distinguishable from the one used in *Wiederholt*.  In *Wiederholt*, the ALJ instructed the VE that plaintiff was "limited to simple, unskilled job tasks."[71]  In this case, the ALJ's hypothetical incorporated more than just a limitation to "simple, unskilled" work.  The ALJ asked the VE to consider a person who "as a result of their limited ability to read, write, and speak English, and as a result of a loss of concentration, persistence, and pace as a result of situational depression, they would need to be limited to simple unskilled work of SVP 2 or less."  Contrary to Plaintiff's contention, the ALJ's hypothetical was more than a vague limitation to "simple, unskilled" work and adequately accounted for Plaintiff's credible mental limitations.[72]  The hypothetical question which incorporated the ALJ's RFC determination was proper.

Plaintiff also argues that the Medical and Vocational Guidelines ("Grid"), 20 C.F.R. Part 404, Subpart P, Appendix 2, direct a finding of disabled under section 202.09 (as explained in 202.00(d)) for an individual between the ages of fifty and fifty-four who is unable to return to past relevant work, has a history of unskilled work experience, and has an inability to communicate in English.

Rule 202.09 applies to individuals who are illiterate or unable to communicate in English.[73]  In Guillen II, the Court found that the record provided sufficient evidence to support

---

[71]*Id*. at *4.

[72]*See Green v. Colvin*, Case No. 13-2229-CM, 2014 WL 4284828, *2 (D. Kan. Aug. 28, 2014) ("The ALJ's hypothetical goes beyond *Wiederholt's* sparse, two-word RFC description of 'simple, unskilled' . . . [a]nd both the hypothetical and conclusion make specific references to plaintiff's limitations, including a classification of SVP–1 or SVP–2."); *Dannels v. Astrue*, Case No. 07-4122-JAR, 2008 WL 4191530, *18 (D. Kan. Sept. 11, 2008) (finding ALJ did not use the broad, unspecified term "simple, unskilled job tasks.").

[73]*See* 20 C.F.R., pt 404, subpt. P. app. 2, § 202.09.

the ALJ's finding that Plaintiff's allegation of being unable to communicate in English was not credible.[74]  The ALJ's decision in that case found that:

> her allegation of being unable to communicate in English to be incredible given that she has been in the country since age 24 and admitted that she speaks some English.  More credibly, in July 2008 she was found to communicate fairly well in English by an admitting hospital physician.  She admitted that she reads some English, was schooled in 1993 in reading English, that she can follow a recipe in English and can read bills, letters and newspapers.[75]

In this case, the ALJ found that Plaintiff testified that she understands English and she took her driver's test in English.[76]  The ALJ found that Plaintiff could partially communicate in English.  Although Plaintiff utilized an interpreter at the hearing, she nevertheless stated that she understood some English and communicated fairly well in English.[77]  Therefore, the ALJ did not err in failing to apply Rule 202.09.

## VI.    Conclusion

For these reasons, the Court concludes that the ALJ did not err in finding Plaintiff disabled as of June 12, 2009, but not before.  The Court finds that the Commissioner's findings are supported by substantial evidence.  Accordingly, the decision of the Commissioner will be affirmed.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's decision finding Plaintiff disabled as of June 12, 2009, but not before, is **AFFIRMED**.

**IT IS SO ORDERED**

---

[74] Doc. 4–6 at 74–75, R. 719–20.

[75] Doc. 4–4 at 55, R. 371.

[76] Doc. 4–6 at 44, R. 689; Doc. 4–8 at 22, R. 980.

[77] Doc. 4–8 at 21, R. 979–80.

**Dated:** September 29, 2014

S/ Julie A. Robinson

**JULIE A. ROBINSON**

**UNITED STATES DISTRICT JUDGE**